**UNITED STATES DISTRICT COURT**

**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| *versus* | : | CRIMINAL NO. 15-173-BAJ-EWD |
| | : | |
| JESSE ALLAN BURCHAM | : | |

**THE UNITED STATES' POST-HEARING BRIEF ON
DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

NOW INTO COURT, comes the United States of America, by J. Walter Green, United States Attorney for the Middle District of Louisiana, through Jamie A. Flowers, Jr., Assistant United States Attorney, who files this post-hearing brief on the basis that, pursuant to a lawful vehicle traffic stop and consent from the driver to search the vehicle, the seizure of JESSE ALLAN BURCHAM, hereafter "defendant," and search of his vehicle were lawful.

**I.     LAW AND ARUGMENT**

In cases, such as this, where the search at issue is conducted without a warrant, the government bears the burden of proving, by a preponderance of the evidence, that the search was valid.[1]  In the evidentiary hearing on the defendant's Motion to Suppress held on August 8, 2016, hereafter "hearing," the United States met its burden by proving: (1) the traffic stop itself was lawful; (2) the duration of the traffic stop was lawful; and (3) the search of the defendant's vehicle was lawfully conducted pursuant to the defendant's valid consent.

**A.     Traffic Stop**

First, in his Motion to Suppress, the defendant argues that the officers illegally seized the defendant; however, the facts presented during the hearing clearly show that the seizure of the defendant was supported by reasonable suspicion.  In this case, the defendant's initial contact

---

[1] United States v. Waldrop, 404 F.3d 365, 368 (5th Cir. 2005) (citing United States v. Castro, 166 F.3d 728, 733 n.7 (5th Cir. 1999)).

with law enforcement occurred when the vehicle he was driving was stopped by Baton Rouge Police Department Officer Rusty Jenkins. (Tr. 18: 12-13). Because traffic stops are considered seizures, we must begin our Fourth Amendment analysis here.

Here, the traffic stop was supported by reasonable suspicion. According to Officer Jenkins, he first became interested in the defendant when he noticed the defendant's vehicle appeared to travel faster than the posted speed limit of 60 miles per hour. (Tr. 17: 21-23). Officer Jenkins then confirmed that the defendant's vehicle was, in fact, traveling 69 miles per hour. (Tr. 17: 23-25). Officer Jenkins further testified that while following the defendant's vehicle, he also noticed the rear tail lights of the vehicle appeared to be brighter than normal as if the breaks were being constantly applied, (Tr. 18 4-7), and the vehicle was drifting back and forth inside its lane. (Tr. 18: 8-9). Due to the speeding, the apparent malfunctioning tail lights, and Officer Jenkin's safety concerns that the defendant may have been fatigued as evidenced by his drifting, Officer Jenkins stopped the defendant's vehicle.

Although the defendant suggests that the officer's true motivation in effecting the stop was not, in fact, the reasons stated above, that suggestion is completely irrelevant. It has been long established that the subjective motivations of individual officers in effecting traffic stops play no part in a court's Fourth Amendment analysis.[2] Thus, where there is an objectively reasonable basis for a stop – such as the speeding, malfunctioning equipment, and improper lane usage alleged here – the existence of pretext is irrelevant.

Second, the defendant argues that the officers unlawfully prolonged the traffic stop

---

[2] See Whren v. United States, 517 U.S. 806, 811 (1996); United States v. Sanchez-Pena, 336 F.3d 431, 437 (5th Cir. 2003) (holding that "the constitutional reasonableness of the stop does not depend upon the actual motivations of the officer involved. An Officer may stop a motorist for a traffic violation even if, subjectively, the officer's true motive is to investigate unrelated criminal offenses.") (citing Whren); Goodwin v. Johnson, 132 F.3d 162, 173 (5th Cir. 1997) ("So long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment….") (citing Whren).

2

beyond the reasonable time required to address the purpose of the stop, and the officers did not have reasonable suspicion to extend the stop by continuing to interrogate the defendant beyond the original justification of the stop.

Here, during the hearing, Officer Jenkins testified that after making initial contact with the defendant, identifying himself, and asking the defendant to step out of the vehicle for officer safety, Officer Jenkins then began to address the reasons for the traffic stop with the defendant. (Tr. 19: 6 – 20:8). First, Officer Jenkins addressed the issue of the defendant's apparent malfunctioning tail lights. (Tr. 20: 13-14). Once the issues with the lights were address, Jenkins then moved on to the defendant's speeding. (Tr. 20:14-17). Officer Jenkins then moved on to the issue of the defendant's improper lane usage. According to Officer Jenkins, because the defendant was drifting back and forth in his lane, Jenkins was concerned that the defendant may have been driving while fatigued. (Tr. 20: 19-23). As a result, Jenkins asked the defendant a series of more detailed questions about the defendant's travel itinerary and purpose of travel. (Tr. 20: 22 – 21: 24). According to Officer Jenkins, it was during this line of questioning that Jenkins noticed what he described as the defendant's inconsistent and suspicious responses to Jenkins' questions. So Jenkins decided to move past the initial purposes for the stop and request the defendant's consent to investigate further by conducting a search of the defendant's vehicle.

Because the traffic stop was supported by reasonable suspicion, i.e. the officer's concerns regarding the defendant's speeding, malfunctioning equipment, and fatigued driving, and because the facts clearly show that these reasons for the traffic stop were still being addressed up until Jenkin's asked for consent to search the defendant's vehicle, which the government agrees was unrelated to the initial reasons for the traffic stop, the question of whether the stop was unlawfully extended turns on whether the defendant's consent to have his vehicle searched was valid.

**B.     Consent**

The defendant argues that his consent to extend the duration of the stop by searching his vehicle was invalid because his consent was not free and voluntary.  While, as the United States articulated in his initial response, the Court must look at six factors to evaluate the voluntariness of consent, in his Motion, the defendant reasons that his consent was not freely and voluntarily given because it was the product of unlawful detention.  (Rec. Doc. 26, p. 2).  As such, the United States will now limit its discussion pertaining to consent to that of the first factor, namely, the voluntariness of the defendant's custodial status.

Here, for the reasons discussed in detail above, the defendant's consent was not the result of an unlawful detention.  The defendant's detention resulted from a valid traffic stop conducted pursuant to reasonable suspicion.  While the defendant is correct in his assertion that the officers did not tell the defendant that he was free to leave once the initial purpose for the traffic stop had ended and prior to requesting the defendant's consent to search his vehicle, (Tr. 68:2-8), the officers were under no obligation to do so.[3]  While it is also true, as the defendant asserts, that the defendant was eventually placed in handcuffs and placed in the back of the patrol vehicle, the record makes clear that he had already consented to his prolonged detention prior to the officers taking this action against him.  As such, the defendant's argument pertaining to the level of the defendant's detention, i.e. being placed in handcuffs, Mirandized, and placed in the back of a patrol vehicle, is misplaced here.

**C.     Probable Cause**

In the alternative, even if the act of placing the defendant in handcuffs, Mirandizing him, and placing him in the back of a patrol vehicle somehow invalidated the defendant's previously

---

[3] See Ohio v. Robinette, 519 U.S. 33, 39-40 (1996) (holding that it would be "unrealistic to require police officers to always inform detainees that they are free to go before a consent to search may be deemed voluntary").

4

given consent, the officers had probable cause to continue searching the defendant's vehicle without a warrant, notwithstanding the defendant's consent.

Consent is merely one exception to the warrant requirement. Officers may also conduct a warrantless search if: (1) probable cause supports their search; and (2) "exigent circumstances" exist.[4] Generally, exigent circumstances exist and conducting a warrantless search is justified if the police reasonably believe that unless they immediately conduct a warrantless search, the evidence is in imminent danger of being removed or destroyed.[5] One example of exigent circumstances is a case, such as this one, where drugs are believed to be contained within an automobile.

The Supreme Court defines probable cause to search as "a fair probability that contraband or evidence of a crime will be found in a particular place."[6] Here, Corporal Cowart testified that he located an aftermarket compartment concealed within the bumper of the defendant's vehicle. (Tr. 68: 11-13). Cowart further explained that based on his more than eight years of training and experience as a law enforcement officer, he knows that "higher end drug smugglers…use these types of compartments to smuggle their narcotics…." (Tr. 55:4 – 59:13). Cowart further testified that in the ten to fifteen instances where he encountered hidden compartments in vehicles, nearly all of them had contraband in them. (Tr. 59:14 - 60:1). As such, based on this, once Cowart located the hidden compartment in the defendant's vehicle, taken together with all of the facts the officers had obtained up to that point, the officers had probable cause to search the inside of the hidden compartment.

As such, the officers in this case had both, (1) probable cause to continue searching the vehicle after the defendant's detention was escalated, and (2) exigent circumstances to conduct

---

[4] See Kirk v. Louisiana, 536 U.S. 635, 638 (2002).
[5] Ker v. State of California, 374, U.S. 23, 40-42 (1963); United States v. Hearn, 563 F.3d 95, 105 (5th Cir. 2009).
[6] Illinois v. Gates, 462 U.S. 213, 238 (1983).

5

the search without first obtaining a warrant. Therefore, even if the Court determined that the defendant's consent was invalidated once he was handcuffed, placed in the back of the patrol vehicle, and Mirandized, the continued search of his vehicle and evidence derived from it should still stand.

## II. CONCLUSION

Based on the foregoing, taken together with the facts presented during the hearing as well as the matters presented by the United States in its initial memorandum filed in opposition to the defendant's Motion to Suppress, the defendant's Motion to Suppress must fail. First, the initial traffic stop of the defendant was supported by reasonable suspicion. Second, the extended duration of seizure was a result of the defendant's consent to search his vehicle. Lastly, the defendant's consent to search his vehicle was freely and voluntarily given. Accordingly, the United States respectfully requests that this Honorable Court deny the defendant's Motion to Suppress.

UNITED STATES OF AMERICA, by

J. WALTER GREEN
UNITED STATES ATTORNEY

/s/ Jamie A. Flowers, Jr.
Jamie A. Flowers, Jr., GABN 940394
Assistant United States Attorney
777 Florida Street, Suite 208
Baton Rouge, Louisiana  70801
Telephone: (225) 389-0443
Fax: (225) 389-0561
E-mail: jamie.flowers@usdoj.gov